UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-10474-GAO

CLIFFORD E. MOSKOW,
Plaintiff,

v.

ALIZA WHEELER, JOHN DUNLEA, and DASHEL DUNLEA,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
March 5, 2026

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has issued a Report and Recommendation (dkt. no. 94), recommending that the Court grant the defendants' Motion to Withdraw (dkt. no. 86) a pending motion for costs and deny the defendants' Motion for Attorney Fees (dkt. no. 78). The defendants have objected to the R & R with respect to the attorneys' fees, and the plaintiff has filed a motion for leave to file a response to the objection (dkt. no. 96), which I now grant.

After carefully reviewing the parties' submissions, the R & R, the defendants' objection, and the plaintiff's response, I agree with the magistrate judge's analysis and conclusions for substantially similar reasons advanced by the plaintiff. The defendants argue that the magistrate judge failed to assess the frivolousness of the plaintiff's claims against defendant Dashel Dunlea. However, as the plaintiff notes, the magistrate judge did so both specifically and in the broader context of the litigation. Further, even if she had not, upon a review of the record, the defendants have not demonstrated that the claims against Dashel were frivolous.

Accordingly, I ADOPT the R & R. The pending Motion to Withdraw is GRANTED and the Motion for Attorney Fees is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLIFFORD E. MOSKOW,
    Plaintiff,

v.            CIVIL ACTION NO. 24-cv-10474-GAO

ALIZA WHEELER, JOHN DUNLEA,
and DASHEL DUNLEA,
    Defendants.

## REPORTS AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR ATTORNEY'S FEES AND TO WITHDRAW THEIR MOTION FOR COSTS (#78, 86)

KELLEY, U.S.M.J.

Bringing a close to this case involving feuding former family members,[1] the court issues reports and recommendation on the remaining motions.[2] First, because the parties have resolved the issue of costs, the Defendants' motion to withdraw (#86), should be GRANTED, resulting in the termination of the Defendants' motion for costs (#79).

For the reasons discussed below, the Defendants' motion for attorney's fees (#78), should be DENIED.

---

[1] The Plaintiff's oldest son was married to the Defendants, Ms. Wheeler and Mr. Dunlea's, daughter, who is the Defendant, Dashel Dunlea's, older sister.

[2] This action was dismissed, with prejudice, on the Plaintiff's motion. (##76-77.) The remaining motions were subsequently filed and referred. (#93.) In this posture, the court issues reports and recommendation. *See Adams v. Gissell*, No. 20-cv-11366-PBS, 2022 WL 2387881, at *1, n. 1 (D. Mass. Apr. 19, 2022) (Kelley, M.J.), *report and recommendation adopted*, 2022 WL 16702407, at *1 (D. Mass. Aug. 24, 2022).

Prior Proceedings

The prior proceedings are set out in the court's October 8, 2025, report recommending that the Plaintiff's motion to dismiss this action, with prejudice, be granted. (#75 at 2-4.) The court recommended that dismissal with prejudice enter as to only two of the four conditions proposed by the Defendants in response to the Plaintiff's motion to voluntarily dismiss. The court agreed with the Defendants that dismissal with prejudice should enter subject to their putative rights (1) to seek costs, *see id.* at 5-6, and (2) to seek additional attorney's fees[3] or other sanctions based on the Plaintiff's litigation conduct, *see id.* at 6-7. The court disagreed with the Defendants that dismissal with prejudice should enter subject to their putative rights (3) to bring a separate action related to the Plaintiff's litigation conduct, *see id.* at 7, and (4) to seek enforcement of the court's discovery order regarding deletion of text messages and emails and sanctions based on the Plaintiff's alleged violation of the discovery order, *see id.* at 7-8.

Neither party objected to, or otherwise attempted to appeal from, the October 8, 2025, report and recommendation, and Judge O'Toole adopted it. Thus, dismissal with prejudice entered only as to the first and second proposed conditions. (#76 at 1-2); *see* #77.

Discussion

The Defendants seek $101,227.50 more in attorney's fees and factual findings, under Mass. Gen. Laws ch. 231, § 6F, that the Plaintiff's claims "were wholly insubstantial, frivolous and not advanced in good faith." (#89 at 10); *see also* #78 at 16.[4] In addition to Mass. Gen. Laws ch. 231,

---

[3] The court previously granted, in part, the Defendant's motion for attorney's fees under the Massachusetts Anti-SLAPP statute. (#60.) The Plaintiff has already paid about $30,000 of the Defendants' attorney fees. *See* #84-3 ¶ 17; *see also* #84 at 8, n.4.

[4] The Defendants also seek "additional sanctions" to deter the Plaintiff, *see* #78 at 16; *see also* #89 at 10, but they do not identify those additional sanctions, so the court does not address this request further.

2

§ 6F, the Defendants rely on Fed. R. Civ. P. 37 and a federal district court's inherent authority to sanction. (#78 at 1.) The court addresses these authorities in turn.

    1. Fed. R. Civ. P. 37.

Under Fed. R. Civ. P. 37, the Defendants seek $8,346 in attorney's fees incurred in connection with their motion to compel, *see* #78 at 12, which the court granted in entering the discovery order that the Plaintiff allegedly violated by timely moving to dismiss this action with prejudice, rather than submitting the spoliation proffer, *see* #71; *see also* #75 at 3-4. However, in the October 8, 2025, report and recommendation, the court expressly found that given all the circumstances, "an award of expenses on the Defendants' motion to compel [was] unjust." (#75 at 8).[5] The Defendants did not challenge that finding before Judge O'Toole adopted the report and recommendation, and dismissal with prejudice did not enter subject to the fourth proposed condition. The Defendants do not address the standard for reconsideration. The court therefore does not recommend an award of $8,346 in attorney's fees incurred in connection with the Defendants' motion to compel.[6]

    2. Mass. Gen. Laws ch. 231, § 6F.

Mass. Gen. Laws ch. 231, § 6F, provides, in relevant part:

---

[5] *See also id*. at 7, n.8 ("…the court is not recommending that the Plaintiff's motion be granted subject to the Defendants' opportunity to seek, under Fed. R. Civ. P. 37, sanctions related to the discovery order"); *id*. at 8, n.9 ("Under Fed. R. Civ. P. 37(a)(5)(A)(iii), a court must not award expenses on a motion to compel that is granted if 'other circumstances' make the award 'unjust.' An award of expenses against a disobedient party, the attorney advising him, or both should not be made when 'other circumstances' make it 'unjust.' Fed. R. Civ. P. 37(b)(2)(C)").

[6] The court also reasoned in the October 8, 2025, report and recommendation that a request related to the Defendants' motion to compel would likely be subsumed within a request for expenses and other sanctions related to the Plaintiff's litigation conduct, i.e. within the first proposed condition. (#75 at 7.) The court thus considers the Defendants' motion to compel in that respect.

> Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the *court* may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims…whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith…
>
> If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims….

*Id.* (italics supplied). The definition of "court" is limited to "the supreme judicial court, the appeals court, the superior court, the land court, any probate court and any housing court, and any judge or justice thereof." Mass. Gen. Laws ch. 231, § 6E.

The weight of authority in this district is that a federal district court, even when exercising diversity subject-matter jurisdiction, does not have the authority to enter an award of attorney's fees under Mass. Gen. Laws ch. 231, § 6F. Judges have relied both on § 6E's limited definition of "court" and the *Erie*[7] doctrine principle that the Federal Rules of Civil Procedure supersede a state rule if a federal rule is coextensive with the state rule and the federal rule is otherwise constitutional.[8] *Monahan Corp. N.V. v. Whitty*, 319 F. Supp. 2d 227, 229-31 (D. Mass. 2004) (Cohen, M.J.); *see Anaqua, Inc. v. Schroeder*, No. 12-cv-10710-FDS, 2013 WL 1412190, at *2 & n. 1 (D. Mass. Apr. 5, 2013); *see also Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F. Supp. 2d 442, 445 (D. Mass. 2005) ("§ 6F is applicable only to cases brought in state courts and does not permit such awards by federal district courts") (citing *Monahan*); *Gov't Employees Ins. Co. v. Barron Chiropractic & Rehabilitation, P.C.*, No. 16-cv-10642-ADB, 2018 WL 1640044, at

---

[7] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[8] The Defendants do not seek attorney's fees under Fed. R. Civ. P. 11. *See* #78 at 1.

*1 (D. Mass. Apr. 5, 2018) (citing *Brandon*); *Rasla v. Wells*, No. 23-cv-12499-DJC, 2024 WL 3952752, at *5 (D. Mass. Aug. 27, 2024) (citing *Brandon* and *Monahan*); *cf. Beacon Towers Condominium Tr. v. Alex*, 473 Mass. 472, 479 (2016) (citing *Monahan* favorably in holding that, given § 6E's limited definition of "court," an arbitrator did not have the authority to enter a § 6F award).

    The three cases cited by the Defendants, *see* #78 at 15, are not to the contrary. Judge Young in *Hi-Tech Pharmaceuticals, Inc. v. Cohen*, 208 F. Supp. 3d 350, 357 (D. Mass. 2016), and the First Circuit in *Boston Pilots v. Motor Vessel Midnight Gambler and East Coast Excursions, Inc.*, 357 F.3d 129, 135-36 (1st Cir. 2004), did not specifically address a federal district court's authority to enter a § 6F award. The *Boston Pilots* court affirmed Judge O'Toole's summary denial of the award, *see* 357 F.3d at 135, finding that the defendant "was entitled to test [the allegedly meritless] theory through the summary judgment phase" and that "though ultimately unavailing, [the defendant's] efforts were supported by a marginally colorable foundation and thus not wholly insubstantial or frivolous," *see id*. at 136.

    In the third case, *Brossi v. Fisher*, 51 Mass. App. Ct. 543 (2001), the Massachusetts Appeals Court held that the state district court did not have the authority to enter a § 6F award, given § 6E's limited definition of "court," and there was no indication that in enacting another statute, the Massachusetts Legislature intended to broaden the definition. *See* 51 Mass. App. Ct. at 547-48. In fact, *Brossi* has been cited to support the conclusion that a federal district court does not have authority to enter a § 6F award. *Monahan*, 319 F. Supp. 2d at 231.

    Even if one assumes, contrary to the weight of authority, that a federal district court does have such authority, a § 6F award should not enter here, as the Defendants have not shown that "substantially all" of the Plaintiff's claims were "wholly insubstantial, frivolous." Mass. Gen.

5

Laws ch. 231, § 6F.[9] The Plaintiff initially brought one defamation claim and several contract-related claims. The Defendants did not make the first-stage showing under the Massachusetts Anti-SLAPP statute that the contract claims were based on their petitioning activity, and those claims were found to be adequately pled. (#42.)[10]

The Defendants, see #78 at 8, 13, broadly assert that there was no factual basis for the contract claims, relying on the Plaintiff's testimony at his deposition which, they argue, contradicted the Plaintiff's allegation in the complaint that Dashel was part of the tuition-payment

---

[9] The statute is phrased in the conjunctive. Substantially all the Plaintiff's claims must be wholly insubstantial, frivolous "and not advanced in good faith." *Id*. The court only needs to address frivolousness. "A claim is frivolous if there is an absence of legal or factual basis for the claim, and if the claim is without even a colorable basis in law." *Fronk v. Fowler*, 456 Mass. 317, 329 (2010) (cleaned up) (internal citations omitted); *see also Boston Pilots*, 357 F.3d at 136 (defenses supported "by a marginally colorable foundation" were "not wholly insubstantial or frivolous").

[10] Even claims based on a defendant's petitioning activity, such as the original defamation claim here, may proceed if the plaintiff shows that the defendant's petitioning activity "was devoid of any reasonable factual support or any arguable basis in law" and "caused" the plaintiff "actual injury." *Bristol Asphalt, Co., Inc. v. Rochester Bituminous Prods. Inc.*, 493 Mass. 539, 557 (2024) (quotation marks omitted) (quoting Mass. Gen. Laws ch. 231, § 59H). The Plaintiff was simply found not to have shown that statements made during the harassment prevention order proceeding were devoid of any reasonable factual support or any arguable basis in law. (#42.)
   Similarly, this court cannot conclude that the original defamation claim was wholly insubstantial or frivolous merely because the Plaintiff disputed that statements made during the harassment prevention order proceeding were protected by the litigation privilege, and Judge O'Toole agreed with the Defendants. *See* #7-5 at 2 (the Defendants' pre-suit assertion, through counsel, that the statements were privileged); #7-6 at 1-2 (the Plaintiff's response, through counsel, that "it would be up to a judge…"); #42 (statements such as those alleged in the complaint are "generally" privileged); *see also Bassichis v. Flores*, 490 Mass. 143, 153-54 (2022) ("A court determines whether the litigation privilege is applicable on a case-by-case basis, after a fact-specific analysis, with a proper consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation") (cleaned up) (citation omitted); *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976) ("statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding"). A claim is not wholly insubstantial or frivolous just because it ultimately fails. *See Boston Pilots*, 357 F.3d at 136.

agreement.[11] But based on the Plaintiff's deposition testimony, there was a factual basis for the breach of contract claim *against Ms. Wheeler and Mr. Dunlea*:

> Q. Sir, is it your position that you entered into some sort of contract with [Ms. Wheeler] and [Mr. Dunlea] regarding the tuition money?
>
> A. Yes, we had an agreement.

(#78-1 at 5) (Moskow Depo. 14:19-22). Even accepting that the Plaintiff's deposition testimony contradicted his allegation in the complaint that Dashel was part of the tuition-payment agreement, the contract claims against Ms. Wheeler and Mr. Dunlea remain.

The Defendants urge the court to discredit the Plaintiff's deposition testimony that he had an agreement with Ms. Wheeler and Mr. Dunlea based on an asserted absence of documents in which the tuition payments were called interest-free loans and the existence of text messages in which the payments were called "gifts," including by the Plaintiff. *See* #78 at 3; #89 at 2, 9; *see, e.g.*, #7-3 at 13 (text message). The court declines to do so. Contracts do not have to be in writing to be valid.

---

[11] *Contrast* #10 at 15 (¶ 46) ("Jack, Aliza, and Dashel (hereinafter collectively known as 'the Dunleas'), entered into a contract with Clifford when they requested his assistance in enrolling their son at [Lawrence Academy] and accepted such assistance by way of housing and advancements of tuition costs which Clifford agreed to loan them in the context of their interpersonal and familial relationship. The Dunleas had promised to repay Clifford, but they have failed and refused to do so. The Dunleas therefore breached their contract ….") *with* #78-1 at 5 (Moskow Depo. 5-:1-2 ("I mean, Dashel knew about [the agreement between the Plaintiff and Ms. Wheeler and Mr. Dunlea regarding the tuition money], he wasn't part of [that agreement]"); *see also id*. (Moskow Depo. 14:6-7) ("Q. And who owes you [the tuition money]? A. Aliza Wheeler and Jack Dunlea"); *id*. (Moskow Depo. 14:10-13) ("Q. Does [Dashel] owe you the money? A. I think we released him from the case, and the conversation was always between me and his parents"); *id*. (Moskow Depo. 14:14, 16-18) ("Q. …Does [Dashel] owe you the money?... A. I think from my answer, it's no, I do not believe [Dashel] owes me the money. I mean, maybe someone could argue he does, but we're not doing that").

Moreover, it is reasonable for a person who is not the parent to call partial tuition payments on behalf of a child "gifts," notwithstanding that the person expects to be paid back, where the partial tuition payments were made at a time when the child's parents could not afford to make full tuition payments.[12] Such immediate payments would, for example, save the parents from having to apply for a loan, which surely would not be interest-free, or from having to send their child to a different school.

The court did not witness the Plaintiff's deposition testimony and, in its view, there is some arguably corroborative evidence.[13] The Defendants do not adequately address that evidence, and

---

[12] In a text message to Ms. Wheeler, the Plaintiff wrote, in part:

> My reason for helping Dash is a gift to him but in reality it is also because Nick is my son and has become a part of your family, it is also in my mind a gift towards you and Jack as well since it was something you wanted Dash to have and at this time are unable to do it.

(#7-3 at 13.) In response to interrogatories, the Plaintiff denied specific memory of calling the partial tuition payments "gifts," but also explained that he "meant 'gift' in the sense of a benefit, a good thing that [the Defendants] were receiving." (#78-3 at 8.)

[13] In August 2022, the Plaintiff wrote to Ms. Wheeler and Mr. Dunlea stating that he had hoped after the first year, they would pay more toward the tuition and asking that they pay the final tuition payment or some part of it. (#7-3 at 35.) Ms. Wheeler and Mr. Dunlea apparently did not respond, so the next month, the Plaintiff wrote to them again asking that they pay the final tuition payment. (#7-3 at 21.) Ms. Wheeler responded that she and Mr. Dunlea would not be able to contribute more. *Id*. at 20. The Plaintiff responded that if Ms. Wheeler and Mr. Dunlea were in fact unable to pay the final tuition payment or some part of it, then at least they should contribute toward Dashel's living expenses. *Id*. at 19-20. After further exchange, the Plaintiff wrote, in part:

> The fact that never once have you and Jack offered to up your support for your sons education costs at LA or anything towards his living costs at my home has been surprising. I had helped [another student] with tuition support his first year, and his parents who struggle financially did everything they could to pay me back and cover his future years full costs at LA.

*Id*. at 18 (alterations by this court to avoid identifying the other student). Ms. Wheeler and Mr. Dunlea then agreed to contribute to Dashel's living expenses, *see id*. at 17; *see also* #7-3 ¶¶ 17-18. That Ms. Wheeler and Mr. Dunlea failed to respond to the initial letter arguably supports the

8

fail to meaningfully engage the case law. *Cf. Danger Records, Inc. v. Berger*, 444 Mass. 1, 13, n. 12 (2005) (in dicta, suggesting that the factual findings of the judge who witnessed the party's testimony at the jury-waived trial supported the § 6F award; the trial judge found the party's testimony to be incredible and that he had "conjure[d] up" documentation).

    3. <u>A federal district court's inherent authority to sanction</u>.

The Defendants do not have to defend against these claims at summary judgment or trial and will not have to defend against them again. The claims have been dismissed with prejudice. As the Defendants recognize, in seeking more attorney's fees, they are seeking "extraordinary" relief. (#89 at 1.) They argue that this is an extraordinary case. This court is not persuaded.[14]

The Defendants have not shown that the Plaintiff knew, when he initially filed suit, that the original defamation claim was frivolous. *See* #78 at 13. As discussed, even SLAPP claims may proceed if the petitioning activity causing actual injury was devoid of any reasonable factual support or any arguable basis in law. *See Bristol Asphalt*, 493 Mass. at 557.

---

Plaintiff's claim of a prior agreement to repay. Likewise, the Plaintiff's reference to parents who repaid and Ms. Wheeler and Mr. Dunlea's eventual contributions to Dashel's living expenses arguably support the Plaintiff's claim of a prior agreement to repay.

[14] The Defendants do not discuss the cases they cite in detail, nor would a detailed discussion be helpful given that the decision to invoke the inherent authority to sanction is highly case specific. The court notes, though, that *Adams v. Gissell*, *supra*, No. 20-cv-11366-PBS, on which the Defendants rely, *see* #78 at 13, is not comparable to this case. That case, brought by the husband, a lawyer, against his soon-to-be ex-wife and her boss, was one of more than a dozen cases that the husband filed in state and federal courts around the country, including against his stepdaughters, to gain leverage in the divorce proceeding. *See* 2022 WL 2387881, at *3; 2022 WL 16702407, at *1. The husband was declared a vexatious litigant elsewhere. 2022 WL 16702407, at *1. His allegations in this court contradicted his allegations in other courts. 2022 WL 2387881, at *5. Contrary to the Defendants' claim, the husband's irrelevant and inflammatory smears against the defendants and others, including his stepdaughters, are not like the Plaintiff's alleged "smear" here. (#78 at 13.) It suffices to say that the Plaintiff's alleged "smear" – Ms. Wheeler "smear[s] people with sexual innuendo and false allegations to extract financial gain," *see* #54-1 ¶ 31 – was relevant to the proposed defamation claim.

Similarly, the Plaintiff could seek a judicial determination of whether the allegedly false statements were related to the harassment prevention order proceedings, *see Sriberg*, 370 Mass. at 108, and whether the balance between his right to seek legal redress and public policy supported application of the litigation privilege, *see Bassichis*, 490 Mass. at 153-54. The Plaintiff did not have to abandon his plan to raise a defamation claim because defense counsel anticipated that the claim would be dismissed. And the court is no more inclined to sanction the Plaintiff for trying and failing in this regard than it is inclined to sanction the Defendants for trying and (in the court's view) failing to justify this request for additional attorney's fees.[15]

The court has already rejected the Defendants' broad assertion that "there was no factual basis for [the Plaintiff's] contract claims." *See* #78 at 13. The court also rejects the Defendants' broad assertion "this entire litigation arose from [the Plaintiff's] perjury." *See id*. The "perjury" argument does not address the "entire" litigation. It addresses the breach of contract claim against Dashel.

Furthermore, the Plaintiff's alleged about-face regarding Dashel's participation in the tuition-payment agreement could have been the result of an initial mistaken belief as to the facts or law. The Plaintiff attests that he is not an attorney and when he initially filed suit, he believed that Dashel was involved because he knew about and benefitted from the agreement, *see* #84-3 ¶ 12; *see also id*. ¶ 13. See *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) ("A witness testifying under oath or affirmation violates [the federal criminal perjury statute, 18 U.S.C. § 1621] if [he]

---

[15] The Plaintiff seeks sanctions for the "over-eager" pursuit of attorney's fees. (#84 at 2, n.1); *see id*. at 16-17; *see also* #92 at 5, n.4. The court does not recommend such sanctions. For one thing, the claim is under-developed. Further, while the Defendants' assertion that the Plaintiff "admit[ted] he committed perjury," *see* #78 at 7, is especially dubious, the Defendants have not, in the court's view, crossed the line from zealous advocacy.

gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory"); *Commonwealth v. Douglass*, 46 Mass. 241, 245 (1842) ("A witness, by mistake or defect of memory, may testify untruly without being guilty of perjury or any other crime").

The court rejects the Defendants' argument that the Plaintiff "abused the judicial process" by filing "frivolous" motions to dismiss for lack of complete diversity and to amend. Those motions were not frivolous. (#78 at 13; *see id*. at 5-6, 7.) An evidentiary hearing was held on the subject-matter jurisdiction motion and this court's January 30, 2025, report and recommendation rested in part on a determination of Dashel's credibility. (#37 at 5.)[16]

In dismissing the original defamation claim based on statements made during the harassment prevention order proceedings, Judge O'Toole did not reach the Defendants' argument that the Plaintiff failed to plausibly allege injury. (#42); s*ee also* #14 at 5. The court thus rejects the Defendants' claim, *see* #78 at 7 & n.5, that the Plaintiff knew, when he filed the motion to amend, that the proposed defamation claim based on other, similar statements, not made during the harassment prevention order proceedings, were frivolous because he failed to plausibly allege injury. That the proposed defamation claim was at least colorable is evidenced by this court's thorough treatment of the issue. (#61 at 5-8.)[17]

---

[16] The objection to this report and recommendation was not frivolous. *See* #78 at 6. It raised colorable issues, including whether the court should have credited Dashel's testimony given the actions that he took with regard to his domicile after suit (and the motion) was filed. (#38 at 4-6.)

[17] The objection to this August 14, 2025, report and recommendation was not frivolous. *See* #78 at 7. The Plaintiff's argument that the statement that he was "grooming" Dashel or other young men constituted defamation per se was not without a colorable basis in law. (#65 at 3-5.)

Finally, the court declines to recommend an award of attorney's fees based on the Plaintiff's alleged spoliation of emails and text messages and violation of the discovery order. (#78 at 14); *see* #71.[18] First, that the Plaintiff has belatedly proffered an explanation for the deletion of emails (and the search for relevant emails, both before and after deletion) undercuts the Defendants' argument, *see* #78 at 14; *see also* #89 at 6, that the Plaintiff moved to dismiss the action because he could proffer no credible explanation for deletion, or because he had emails to hide. *Contrast* #84-3 ¶¶ 17, 19 (the Plaintiff's belated affidavit attesting that the decision to move for dismissal was motivated by the monetary and emotional costs of pursuing the action further, as well as "expanding" "administrative requirements").[19]

---

[18] If the court were to recommend such an award, the recommended award would of course be less than the total requested award. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) ("The complaining party…may recover 'only the portion of his fees that he would not have paid but for' the misconduct") (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)); *see also id.* at 110-11 ("if a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time – for example, when a party was legally required to disclose evidence fatal to its position – then the court may grant all fees incurred from that moment on"); *see, e.g.*, *NuVasive, Inc. v. Day*, 77 F.4th 23, 31-32 (1st Cir. 2023) (affirming award of attorney's fees incurred after the complaining party discovered that the evidence at issue had been spoliated).

[19] Moskow Group employee King Iwan and Moskow Group IT consultant Kirk Lauze deny that the Plaintiff instructed them to delete relevant emails. (#84-4 ¶ 21; #84-5 ¶ 13); *see also* #84-3 ¶ 24 (the Plaintiff: "I never deliberately deleted any emails…"). The Defendants have not countered these denials with evidence that the Plaintiff (or his counsel) did instruct them to delete relevant emails. *See* #89 at 6-7. Nor have the Defendants countered the explanation for the deletion of emails with evidence, and that explanation does not support the conclusion that deletion was "an attempt to…prevent [them] from uncovering harmful evidence." *Id.* at 6. Based on the belated third-party affidavits, it appears that around September 2022, Mr. Iwan gathered emails that he believed relevant to this action and put them in a folder to be preserved. (#84-4 ¶ 6.) Also around September 2022, it became apparent that the Plaintiff's email access was sluggish, so Mr. Iwan reached out to Mr. Lauze and they, along with the Plaintiff, decided to move his "deleted" email folder, which contained over 80,000 emails, from the email server to a local workstation. Mr. Lauze did the extraction. *Id.* ¶¶ 7-12; *see* #84-5 ¶¶ 5-8. In December 2022, Mr. Iwan conducted a further search of the Plaintiff's email, including the "deleted" email folder on the local workstation, and put emails he believed relevant to this action in a folder to be preserved. (#84-4 ¶¶ 13-14.) As part of a general IT upgrade, in December 2024, the local workstation with the "deleted" email folder was decommissioned; however, a program called "BackBlaze" had been installed

The belatedly submitted affidavits do not address the deletion of text messages. *See* #84-3 ¶¶ 24-27; *see also* #84-4; #84-5. And the Plaintiff did testify at his deposition that he has "always" deleted text messages "because [he does not] like having hundreds of [them] sitting on [his] phone," and he would "only print it if it's pertinent." (#78-1 at 12) (Moskow Depo. 104:8-14, 17-24, 105:1-6, 9-11). He also testified that when he "was frustrated in Aliza's behavior and her defamation in '22, [he] absolutely, definitely probably texted a few different people then saying [he] was upset about it and frustrated about it. But [he does not] have any of those. …" *Id*. at 14 (Moskow Depo. 113:2-8.) Yet the Defendants make no argument, and proffer no evidence, that they have tried and failed to obtain relevant deleted text messages from other sources, or of the likely futility of such efforts. *Cf. NuVasive, Inc. v. Day*, No. 19-cv-10800-DJC, 2021 WL 9059745, at *7 (D. Mass. Aug. 23, 2021) (Kelley, M.J.) (recommending adverse inference in connection with determination of damages and award of attorney's fees after the defendants were found on summary judgment to have breached non-competition and non-solicitation agreements with their former employer; finding that the plaintiff had satisfied its burden under Fed. R. Civ. P. 37(e) of showing that the deleted text messages could not be restored or recovered through additional discovery; the defendants' new employer refused to produce the discovery requested by the plaintiff and the plaintiff persuasively argued that it was unable to seek text messages with the customers that the defendants improperly solicited because the messages themselves were how the plaintiff would have identified the customers), *report and recommendation adopted*, No. 19-cv-10800-DJC, ECF Nos. 225-226 (D. Mass. Oct. 13, 2021), *see also* ECF No. 252 (D. Mass. Apr. 12, 2022) (fees order), *aff'd*, *NuVasive*, *supra*, 77 F.4th at 32-33.

---

beforehand. *Id*. ¶¶ 15-18; *see* #84-5 ¶¶ 9-12. After the spoliation issue arose, Mr. Iwan used BackBlaze to recover 8,000 emails. He does not believe that any of the recovered emails are relevant to this action. (#84-4 ¶¶ 19-20.)

13

The Defendants do not cite this authority, but the court is aware that some exists for awarding the lesser sanction of the attorney's fees incurred in filing a motion for sanctions based on spoliation when the proponent has not shown that more severe sanctions are warranted. *Hefter Impact Tech., LLC v. Sport Maska, Inc.*, No. 15-cv-13290-FDS, ECF No. 143 at 16-17 (D. Mass. Aug. 3, 2017) (the proponent's "decision to bring this motion, although not ultimately successful, was an entirely reasonable response under the circumstances") (citing *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Lit.*, 299 F.R.D. 502, 526 (S.D. W. Va. 2014)); *see also Hefter Impact Tech., LLC v. Sport Maska, Inc.*, No. 15-cv-13290-FDS, 2017 WL 5798642, at *1 (D. Mass. Nov. 28, 2017). The court is not convinced, however, that a motion for sanctions based on spoliation "was an entirely reasonable response under the circumstances." The key "circumstance[]" here is that the Plaintiff moved to dismiss the action, with prejudice, before summary judgment or trial.

## Review by a District Judge

The parties are advised that any party who objects to this Report and Recommendation must file specific written objections with the Clerk of this Court within fourteen (14) days of service of the Report and Recommendation. The objections must specifically identify the portion of the Report and Recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).

/s/ M. Page Kelley  
M. Page Kelley  
January 22, 2026                                                    United States Magistrate Judge